```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DOLORES DOUGHERTY, et al.,      :
                                :
            Plaintiffs,         :   CIVIL ACTION
                                :
       v.                       :
                                :   NO. 11-CV-0093
                                :
DEUTSCHE BANK NAT'L CO.,        :
et al.,                         :
                                :
            Defendants.         :
```

### MEMORANDUM AND ORDER

**Joyner, C.J.**                                          **August     , 2011**

Before this Court are Plaintiffs' Motion to Remand (Doc. No. 4) and Defendant FDIC's response in opposition thereto (Doc. No. 15), as well as Defendant FDIC's Motion to Dismiss for lack of subject matter jurisdiction (Doc. No. 3), Plaintiffs' response in opposition thereto (Doc. No. 5), and Defendant FDIC's reply in further support thereof (Doc. No. 16). For the reasons set forth in this Memorandum, the Court denies the Motion to Remand and grants the Motion to Dismiss.

### I. BACKGROUND

This personal-injury lawsuit arises out of Plaintiff Dolores Dougherty's alleged slip and fall on the premises of Deutsche Bank National Company and IndyMac Bank, F.S.B, on February 21, 2007. On June 13, 2008, Mrs. Dougherty and her husband, Daniel,

1

filed suit in the Court of Common Pleas of Philadelphia County, naming Deutsche Bank National Company and IndyMac Bank, F.S.B., as Defendants.

On July 11, 2008, IndyMac Bank, F.S.B., was closed by the Office of Thrift Supervision, and the FDIC was appointed Receiver.  As a result, any litigation against IndyMac Bank, F.S.B., was thereafter to be brought against the FDIC.

On August 7, 2008, the FDIC emailed Plaintiffs' attorney a notice of "Improper Service of Litigation," advising Plaintiffs of the FDIC's appointment as Receiver, the consequent statutory requirement for litigation against the failed institution to be brought against the FDIC, and the additional need to comply with 12 U.S.C. § 1821(d)'s administrative-claims process before seeking or continuing judicial relief against the FDIC.  (Doc. No. 4 Ex. B.)  More specifically, the FDIC advised Plaintiffs that they needed to "[p]resent the properly completed Proof of Claim Form and the supporting documentation to the Receiver on or before the Claims Bar Date, October 14, 2008."  (Id.)  The FDIC also advised Plaintiffs that the Receiver would have 180 days from receipt of the claim to review and decide whether to allow the claim; Plaintiffs would then have "60 days after the date of the notice of disallowance by the Receiver OR . . . 60 days after the end of the 180-day period, whichever is earlier," to either file a lawsuit on the claim or "continue any lawsuit commenced before the appointment of the Receiver."  (Id.)

As a result, Plaintiffs' attorney wrote to the Court of Common Pleas on September 2, 2008, requesting that the state-court action be placed on a deferred status.  (Doc. No. 15 Ex. B.)[1]  The court granted the request and stayed the action.  (Doc. No. 15 Ex. A.)

Mrs. Dougherty filed her Proof of Claim on September 19, 2008.  (Doc. No. 3 Ex. E.)[2]  On or about January 8, 2009, the FDIC mailed her a Notice of Disallowance of Claim, explaining that the claim "ha[d] not been proven to the satisfaction of the Receiver."  (Doc. No. 3 Ex. F.)  The Notice of Disallowance reminded Plaintiff that, in accordance with 12 U.S.C. § 1821(d)(6), she had to either file or continue suit against the Receiver within sixty days if she still sought relief.  (Id.)

Neither Plaintiff took any action with regard to the state-court case during the next sixty days.  In fact, no action was taken in the case until more than seventeen months later, when, on June 17, 2010, the court sent a letter to counsel inquiring whether the matter should remain on a deferred status and required a response within ten days.  (Doc. No. 4 Ex. D.)  On June 28, 2010, Plaintiffs' counsel responded to the court, stating that the "matter may now be taken off deferral as plaintiff will pursue the matter against the remaining Defendant, Deutsche Bank National Company, only."  (Doc. No. 3 Ex. H.)  At a

---

[1] While the parties do not elaborate on the reason for the request, presumably it was to allow the administrative-claims process to proceed.

[2] Mr. Dougherty never filed a Proof of Claim.

case management conference on September 25, 2010, however, it became apparent that Plaintiffs intended to pursue their claims against IndyMac Bank, F.S.B., as well. (See Doc. No. 4. Ex. H.)

Consequently, on October 13, 2010, IndyMac Bank, F.S.B., filed a motion to substitute the FDIC for IndyMac Bank, F.S.B, as the proper defendant. (Doc. No. 3 Ex. G; Doc. No. 4 Ex. J.) The court granted the motion on November 8, 2010, and the FDIC, as Receiver of IndyMac Bank, F.S.B., was substituted as the real party in interest. (Doc. No. 4 Ex. K.) On January 6, 2011, Defendant FDIC removed the case to this Court, pursuant to 12 U.S.C. § 1819(b).

Plaintiffs have moved to remand the case to state court, asserting that (1) the FDIC's removal was untimely, and (2) the substantive requirements for removal by the FDIC are unsatisfied. The FDIC, in turn, has moved to dismiss Plaintiffs' claims against it, arguing that Plaintiffs failed to comply with 12 U.S.C. § 1821(d)'s administrative-claims process and that this Court therefore lacks subject matter jurisdiction over the claims against it.

## II. DISCUSSION

### A. Motion to Remand

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) provides the Federal Deposit Insurance Corporation (FDIC or Corporation) with a statutory right to

remove most cases in which it is a party from state court to federal court. See 12 U.S.C. § 1819(b)(2). Within thirty days of the filing of the notice of removal, the nonmoving party may move to remand the case to state court on the basis of any defect in removal. See 28 U.S.C. § 1447(c).[3]

### 1. Time period for removal

The current language of § 1819(b)(2)(B), as amended in 1991, states that, with certain exceptions,

> the Corporation may, without bond or security, remove any action, suit, or proceeding from State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party.

12 U.S.C. § 1819(b)(2)(B).

Plaintiffs assert that Defendant FDIC's 90-day period for removal began immediately upon its appointment as Receiver on July 11, 2008, and thus expired in October 2008. Defendant, in contrast, asserts that the 90-day period did not begin until it was substituted as a party in the state-court case on November 8, 2010, and thus did not expire until February 2011. The Court agrees with Defendant.

First, the plain meaning of the statutory language supports

---

[3] Though Plaintiffs also argue that removal was improper under the general removal statute, 28 U.S.C. § 1441, this Court will only address removal under 12 U.S.C. § 1819(b) because the latter applies specifically to claims involving the FDIC and Congress's enactment of § 1819(b) greatly expanded the FDIC's ability to remove cases to federal court. See 12 U.S.C. § 1819(b).

Defendant's position.  As the Seventh Circuit has explained,

> Substitution "as a party" must mean "as a party to the litigation."  Reading this language to mean "substituted as the failed bank's receiver" would turn the word "party" into mush.  The FDIC may be a bank's receiver or insurer or regulator (its three statutory capacities), but it is not a "party" to anything in particular in any of these three capacities.  It becomes a "party" only in court.

Buczkowski v. FDIC, 415 F.3d 594, 596 (7th Cir. 2005).

Second, the weight of the case law is on Defendant's side. See, e.g., Dalton v. FDIC, 987 F.2d 1216, 1221 (5th Cir. 1993) (recognizing that the time for removal begins to run from the date the FDIC is substituted as a party to the litigation); Diaz v. McAllen State Bank, 975 F.2d 1145, 1147-48 (5th Cir. 1992) (same); cf. Estate of Harding v. Bell, 817 F. Supp. 1186, 1191 (D.N.J. 1993) ("[S]ection 1819(b)(2)(B) now requires substitution in the state proceedings before removal."); id. at 1190 ("[The Fifth Circuit's holding that the 90-day period begins upon substitution as a party to the proceeding] appears to be a sound rule built on common sense and a straightforward reading of the amended statute.").

Although Plaintiffs rely on FDIC v. Wissel & Sons Construction Co., 881 F. Supp. 119 (D.N.J. 1995), which rejected Harding's interpretation and held that the 90-day period started to run before formal substitution, Wissel & Sons has been criticized for relying on a case that analyzed the language of §

6

1819(b)(2)(B) prior to its amendment in 1991.[4]  See J.E. Dunn Nw., Inc. v. Salpare Bay, LLC, No. 09-1068, 2009 U.S. Dist. LEXIS 99668, at *9 (D. Or. Oct. 26, 2009) ("I am also not persuaded by the post-1991 case[] Wissel & Sons . . . . [I]t relies on a pre-amendment case which suggested that neither the FDIC-removal statute nor the more general removal statute 'explicitly require[s] the FDIC be formally substituted as a party before removal is proper.'  I disagree with this statement in that the statute now explicitly calls for substitution of the FDIC-R to trigger its right to remove." (citation omitted)).

Considering the foregoing, the Court concludes that the 90-day period did not begin to run until the FDIC was substituted as party to the litigation on November 8, 2010.  As the FDIC moved to remand on January 6, 2011, fewer than ninety days later, the FDIC's removal was timely.

### 2. Fulfillment of the substantive provisions of the removal statute

FIRREA provides that, "[e]xcept as provided in [12 U.S.C. § 1819(b)(2)] subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of

---

[4]    Prior to 1991, 12 U.S.C. § 1819 simply stated, "Except as provided in subparagraph (D), the Corporation may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court."  There was no mention of the FDIC's being substituted as a party.  See, e.g., Mountain Ridge State Bank v. Investor Funding Corp., 763 F. Supp. 1282, 1286 n.5 (D.N.J. 1991).

the United States" and are thus removable.  12 U.S.C. §

1819(b)(2)(A)-(B).  Subparagraph (D) excepts from removal a case

> (i) to which the Corporation, in the Corporation's capacity as receiver of a State insured depository institution by the exclusive appointment by State authorities, is a party other than as a plaintiff;
> (ii) which involves only the preclosing rights against the State insured depository institution, or obligations owing to, depositors, creditors, or stockholders by the State insured depository institution; and
> (iii) in which only the interpretation of the law of such State is necessary.

§ 1819(b)(2)(D).  In order to defeat removal, all three prongs of

§ 1819(b)(2)(D) must be met.  See, e.g., Resolution Trust Corp.

v. Butcher & Co., No. 93-1374, 1993 U.S. Dist LEXIS 8901, at *6

n.5 (E.D. Pa. June 16, 1993).  Moreover, while a defendant that

has removed a case usually has the burden of showing that removal

was proper, Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d

Cir. 1990), in the context of removal under § 1819(b)(2) it is

the party objecting to removal who bears the burden of proving

that the three prongs of the § 1819(b)(2)(D) exception are

satisfied.  See Reding v. FDIC, 942 F.2d 1254, 1258 (8th Cir.

1991); Lazuka v. FDIC, 931 F.2d 1530, 1538 (11th Cir. 1991); Pyle

v. Meritor Sav. Bank, 821 F. Supp. 1072, 1075 (E.D. Pa. 1993).

Plaintiffs argue that the case should be remanded based on

the § 1819(b)(2)(D) exception.  Plaintiffs assert that (1)

IndyMac Bank, F.S.B., may be a state-insured depository, (2) the

case concerns Plaintiffs' preclosing rights, and (3) the issues

regarding Defendant's liability concern state law.  Defendant, in

turn, argues that the exception to removal does not apply because IndyMac Bank, F.S.B, is a federally chartered savings bank, not a state-insured depository, and it was appointed by the federal Office of Thrift Supervision, not by a state authority.

In Nassirpour v. FDIC, the court denied a motion to remand a claim against IndyMac Bank, F.S.B, holding that the § 1819(b)(2)(D) exception did not apply.  See Nassirpour v. FDIC, No. 08-7164, 2008 WL 5412432, at *1 (C.D. Cal. Dec. 29, 2008) (explaining that IndyMac Bank, F.S.B, was a not a state-insured depository institution but rather a federally chartered savings bank and that the FDIC had not been appointed by a state agency but by the Office of Thrift Supervision, a federal agency).

The Court thus agrees with Defendant.  Because IndyMac Bank, F.S.B, is not a state-insured depository institution but rather a federally chartered savings bank and because the FDIC was appointed by the Office of Thrift Supervision, a federal agency, Plaintiffs have failed to meet the first prong of the § 1819(b)(2)(D) exception.  As a party must prove all three prongs to have the case remanded, the Motion to Remand must be denied.

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

FIRREA establishes an administrative-claims process that is a jurisdictional prerequisite to suit.  See FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3d Cir. 1991) ("Congress

expressly withdrew jurisdiction from all courts over any claim to a failed bank's assets that [is] made outside the procedure set forth in section 1821."); Rosa v. Resolution Trust Corp., 938 F.2d 383, 395 (3d Cir. 1991). The procedure includes filing an administrative claim with the FDIC and allowing the FDIC 180 days to accept or reject the claim. See 12 U.S.C. § 1821(d)(3)-(5). If the claimant still seeks relief, she then has 60 days, "beginning on the earlier of . . . the end of the [180-day] period . . . or the date of any notice of disallowance," to (1) "request [additional] administrative review of the claim," (2) "file suit on such claim," or (3) "continue an action commenced before the appointment of the receiver." § 1821(d)(6)(A).[5] Failure to comply with the provision is a permanent bar to suit. See § 1821(d)(6)(B) ("If any claimant fails to . . . (ii) file suit on such claim (or continue an action commenced before the appointment of the receiver), before the end of the 60-day period

---

[5] The full text of the provision provides:

> Before the end of the 60-day period beginning on the earlier of-
>   (i) the end of the [180-day] period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or
>   (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),
> the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A).

described in subparagraph (A), the claim shall be deemed to be disallowed . . . as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.").

Defendant argues that, in order to "continue" their preexisting lawsuit, Plaintiffs were required to take affirmative action within sixty days of their Notice of Disallowance; Plaintiffs' failure to do so, according to Defendant, constitutes a fatal failure to comply with the administrative-claims process. Plaintiffs respond that they were not required to take any affirmative action when the case was on deferred status and that they therefore complied with the administrative-claims process. Though the Third Circuit has not ruled on the meaning of "continue" in this context, and though there is case law supporting both positions, the Court finds that the language of the statutory provisions at issue, a reading of the statute as a whole, the legislative history, and the case law from other courts weigh in favor of Defendant's argument.

First, the language of § 1821(d)(6)(B) states that the <u>claimant</u>—not the FDIC, not the court—must <u>continue</u> a pending lawsuit or else lose her right to any relief. As other district courts have explained, "[i]f 'to continue' means to do nothing, there will never be a situation where a pre-existing claim will be barred, because the claimant will always do, at the very

11

least, nothing. The limitations clause for pre-existing claims would become a dead letter." First Union Nat'l Bank of Fla. v. N. Beach Prof'l Office Complex, Inc., 841 F. Supp. 399, 403 (M.D. Fla. 1993) (internal quotation marks omitted); see also Rey v. Oak Tree Sav. Bank, 817 F. Supp 634, 636 (E.D. La. 1993) ("[T]he only reasonable and natural reading of §§ 1821(d)(6)(A) and (B) is that the 60-day period applies to all three options set out in the statute's text: administrative review, filing actions, and pending actions. The court finds no reason . . . to interpret the 60-day period as applying to administrative review and newly-filed suits but not to pending cases . . . .").

Moreover, a reading of the statute as a whole—and specifically the provisions for expedited determination of claims under § 1821(d)(8)—indicates that "continuing" a preexisting claim means filing a motion to renew or taking other affirmative action: Section 1821(d)(8)(C) provides that "[a]ny claimant who files a request for expedited relief shall be permitted to file a suit, or continue a suit filed before appointment of the receiver," if the administrative claim is denied. Like § 1821(d)(6)(B), § 1821(d)(8)(D) provides a fixed amount of time in which to file or continue the suit after administrative denial. Section 1821(d)(8)(D) then clarifies what "continue" means, stating that there can be no suit "[i]f an action described in subparagraph [(d)(8)](C) is not filed, or the motion to renew a

12

previously filed suit is not made" within the time period. § 1821(d)(8)(D) (emphasis added). See also North Beach, 841 F. Supp. at 405 (using this statutory context as one of the reasons for finding affirmative action necessary).

Furthermore, the legislative history of FIRREA supports this interpretation. As explained by a House report,

> After exhaustion of streamlined administrative procedures, a claimant has a choice to either bring a claim de novo in the District Court . . . or have the claim determination reviewed by one or more administrative processes . . . . Any Suit (or motion to renew a suit filed prior to the appointment of the receiver) must be brought by the claimant within 60 days after the denial of the claim.

In Re FDIC, 762 F. Supp. 1002, 1005 (D. Mass. 1991) (quoting H.R. Rep. No. 101-54(I), reprinted in 1989 U.S.C.C.A.N. 86, 214) (first emphasis omitted).

Plaintiffs' reliance on Aguilar v. FDIC, 63 F.3d 1059 (11th Cir. 1995) (per curiam), for the proposition that a plaintiff need not take affirmative action when the case has been stayed is unpersuasive. Aguilar expressly limited its ruling to a narrow set of circumstances, "hold[ing] that, where the district court entered a stay of definite duration, claimants need not take affirmative action to 'continue' a suit which was filed before the appointment of the receiver: the suit goes on when the stay expires." Id. at 1062. The pending case is unlike Aguilar because here the stay was of indefinite duration and the case was

13

not taken off the deferred list until the court contacted Plaintiffs regarding the status of the case months after the administrative process had ended.  Instead, Plaintiffs' case is analogous to those in which courts have found that affirmative action by the plaintiff is necessary to proceed with a suit stayed for an indefinite period.  See, e.g., Lakeshore Realty Nominee Trust v. FDIC, No. 91-0055, 1994 WL 262913 (D.N.H. May 25, 1994) (granting a motion to dismiss because the plaintiff did nothing to attempt to have the stay lifted within the 60-day period described in § 1821(d)(6)); Se. Bank, N.A. v. Gold Coast Graphics Group Partners, 149 F.R.D. 681 (S.D. Fla. 1993); Rey, 817 F. Supp. at 637 (noting that claimants must file a motion to renew or reactivate following a stay); cf. Mitchell v. Greenwood Bank of Bethel, Inc., 827 F. Supp. 106, 109 (N.D.N.Y. 1993) ("[P]laintiff's counsel has filed the required activation affidavit necessary to continue the action.").

In light of the foregoing, this Court finds that Mrs. Dougherty failed to continue her claim in the sixty-day period required by § 1821(d)(6).  Therefore, Plaintiffs did not properly comply with the administrative-claims process as a prerequisite to suit, and Defendant FDIC's Motion to Dismiss for lack of subject matter jurisdiction must be granted.[6]

---

[6] The Court need not address whether, as the FDIC contends, Daniel Dougherty was required to submit a separate administrative claim to the FDIC: Assuming arguendo that Mrs. Dougherty's administrative claim covered Mr.

## III.  CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion to Remand but grants Defendant FDIC's Motion to Dismiss the claims against it for lack of subject matter jurisdiction.

---

Dougherty's claim for loss of consortium, neither Plaintiff continued the lawsuit within sixty days of the Notice of Disallowance.
    To the extent that Plaintiffs suggest that they "were not required to file [a] Proof of Claim form," (Doc. No. 5-2), there is no legal or factual support in the record.